IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EDDIE KENNER,

     Plaintiff,

v.

MEADOWBROOK MEAT
COMPANY, INC.,

     Defendant.

CIVIL ACTION FILE

NO. 1:16-CV-03896-ODE-WEJ

## **FINAL REPORT AND RECOMMENDATION**

     Plaintiff, Eddie Kenner, filed this action alleging that his former employer,

Meadowbrook Meat Company, Inc. ("MBM"), discriminated against him on the

basis of his race (black) and retaliated against him after he complained about a

co-worker's racist language, both in violation of Title VII of the Civil Rights Act

of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.  (See generally Compl. [1].)[1]

_____

    [1] The Complaint cites 42 U.S.C. § 1981 and alleges that defendant deprived
him of "contractual opportunities" (see Compl. ¶¶ 5, 18), but makes no express
claim under that statute.  Thus, the Court does not consider a Section 1981 claim
herein.  However, because the test for intentional discrimination is the same under
both Title VII and Section 1981, see Howard v. BP Oil Co., 32 F.3d 520, 524 n.2

This matter is now before the Court on MBM's Motion for Summary Judgment [51], which seeks dismissal of plaintiff's discrimination and retaliation claims.  In Plaintiff's Memorandum in Support of his Response to Defendant's Motion for Summary Judgment [57], plaintiff argues that his race discrimination claim should survive summary judgment, but he fails to address defendant's arguments regarding his retaliation claim.  Given this failure to respond to defendant's arguments, the Court finds that plaintiff has abandoned his Title VII retaliation claim.  See Road Sprinkler Fitters Local Union 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) (claims alleged in a complaint but not pursued in a responsive memorandum are abandoned).  Thus, summary judgment should be entered against plaintiff on the Title VII retaliation claim.

With regard to the remaining Title VII race discrimination claim, the undersigned **REPORTS** that that there are no disputed issues of material fact requiring a trial, and therefore **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED**.

---

(11th Cir. 1994), the undersigned's recommendation regarding the Title VII claims applies to any Section 1981 claim that could have been pursued.

2

## I.   <u>STATEMENT OF FACTS</u>

The Court draws the material facts largely from the parties' submissions. In support of its Motion for Summary Judgment, MBM as movant filed a Statement of Material Facts as to Which There Is no Genuine Issue to be Tried ("DSMF") [51-2].  <u>See</u> N.D. Ga. Civ. R. 56.1B.(1).  As required by Local Rule 56.1B.(2)a, plaintiff submitted a response.  <u>See</u> Pl.'s Resp. to Def.'s Stat. of Mat. Facts ("R-DSMF") [57-1].   Unfortunately, plaintiff's response does not state whether he admits or denies any of defendant's proposed facts.  The Court has been forced to compare each of defendant's proposed facts with each of plaintiff's responses and use its best judgment to determine whether plaintiff admitted or denied a proposed fact.  Defendant has had to do the same.  <u>See</u> Def.'s Resp. and Objs. to Pl.'s Stat. of Alleged Mat. Facts and Gen. Issues that Must be Tried [65] (hereafter "Def.'s Resp. & Objs.").[2]

Under the Local Rules, the non-moving party may file a statement of additional facts which the respondent contends are material and present a genuine

---

[2] Defendant filed Notices of Objection to some of plaintiff's evidentiary materials.  <u>See</u> Def.'s Notice of Objs. to Pl.'s Exs. [64-1]; Def.'s Not. of Objs. to Aff. of Pl. Eddie Kenner [64-2]; and Def.'s Not. of Objs. to Aff. of Morris King [64-3].   Although the Court does not write separate orders on each of these Notices, it has reviewed them and considers the arguments made therein, <u>infra</u>.

issue for trial.  <u>See</u> N.D. Ga. Civ. R. 56.1B.(2)b.  Although the Local Rules require this statement of additional facts to be "separate" (<u>id.</u>), plaintiff placed his additional proposed facts in R-DSMF.  Given that plaintiff combined his responses to defendant's proposed facts with his proposed additional facts, it has been difficult for the Court to determine which statements in R-DSMF are responsive to DSMF and which are additional facts.[3]  Defendant filed a detailed challenge to these proposed additional facts.  (<u>See</u> Def.'s Resp. & Objs.)

This Court uses the proposed facts and responses as follows.  When a party admits a proposed fact, the Court accepts it as undisputed for purposes of this Motion and cites only the proposed fact.  When a party admits a proposed fact in part, the Court includes the undisputed part.  When a party denies a proposed fact in whole or in part, the Court reviews the record and determines whether a fact dispute exists.  If the denial is without merit, and the record citation supports the

———————————————

[3] Plaintiff often writes long narratives in R-DSMF in violation of the undersigned's directive that there should be only one sentence per numbered fact. (<u>See</u> Order [16] of Mar. 27, 2017.)  Moreover, plaintiff sometimes concludes these narratives with long string citations, which makes it difficult for the Court to match the narrative's factual assertions with supporting record evidence.  The Court perhaps should have struck plaintiff's summary judgment filings and ordered him to do submit them again in compliance with the Rules.  However, the Court has elected not to do so and will work with what has been filed.

4

proposed fact, the Court deems it admitted.  The Court sometimes modifies a proposed fact per a more accurate account found in the other party's response or in the record cited.  The Court further excludes proposed facts that are immaterial, duplicative, or unsupported by the record cited.  Inclusion of a proposed fact to which an objection has been asserted means that the Court has overruled the objection.  Finally, the Court includes facts drawn from its own review of the record.  See Fed. R. Civ. P. 56(c)(3).

### A.   **MBM's Business, Plaintiff's Hiring, and the Reporting Structure**

MBM is a subsidiary of the McLane Company, Inc., which is a supply chain services company distributing food products to restaurants, convenience stores, mass merchants, military installations, and other businesses across the United States.  (DSMF ¶ 2.)  MBM hired Mr. Kenner as a Driver Representative (i.e., a tractor-trailer driver) on or around July 15, 2013, at its Distribution Center ("D.C.") in Newnan, Georgia.  (Id. ¶ 1.)

At all relevant times, plaintiff reported to Transportation Supervisors, including Steve Spradlin, who in turn reported to Transportation Manager Stephen Davies throughout the bulk of plaintiff's employment.  (DSMF ¶ 3.) David Bayne is the Distribution Center Manager of MBM's Newnan, Georgia facility, and has held that position since about November 2012; all employees in

5

the Newnan D.C. ultimately report to him.   (Id. ¶ 4.)   Carla Davis has been

employed by Defendant at its Newnan, Georgia facility since 2012, and has held

the position of Transportation Clerk, Customer Service Representative and

Router/Dispatcher; she has never held a supervisory position.   (Id. ¶ 5.)[4]

### B.   MBM's Handbook, Policies, and DOT Rules

At all relevant times, MBM has maintained an employee handbook which

includes an equal employment opportunity policy, a no harassment policy, as well

as rules that Driver Representatives and other employees are required to follow.

(DSMF ¶ 6.)[5]   Plaintiff and all Driver Representatives ("drivers") employed by

Defendant were required to comply with MBM policy and regulations

promulgated by the federal Department of Transportation ("DOT") regarding

permissible driving time, hours of service, record keeping, accident reporting, and

_____

[4] The Court excludes plaintiff's proposed additional fact that "Ms. Davis in
many instances had direct control over the input of driver's logs and paychecks."
(See R-DSMF ¶ 5.)   The record cited to support it (Berry Dep. [53-9], at 26;
Kenner Aff. [57-3] ¶¶ 8-9) either fails to do so or is clearly not based on personal
knowledge.   (See Def.'s Resp. & Objs. ¶ 5.)   Moreover, the proposed fact is not
material.

[5] Plaintiff admits the above fact, but then disputes whether MBM enforced
the terms of its handbook because it neither disciplined Ms. Davis nor provided
progressive discipline to him.   (R-DSMF ¶ 6.)   Because that response does not
contravene the fact as proposed, and because these assertions are dealt with infra,
the Court deems DSMF ¶ 6 admitted.

other matters.  (<u>Id.</u> ¶ 7.)[6]  An MBM driver's failure to comply with MBM policies, many of which reinforce federal DOT rules and regulations, is cause for the driver to be disciplined or discharged.  (<u>Id.</u> ¶ 8.)[7]  At all times relevant to this case, MBM drivers were required to record their hours of service on paper drivers' daily logs ("logs"), which the drivers completed by hand and turned in upon their return to the Newnan facility following a trip (which might be a multi-day trip).  (<u>Id.</u> ¶ 9.)[8]

### C.   <u>Work of Transportation Clerks</u>

Transportation clerks employed at the Newnan facility perform clerical functions supporting the drivers' work, including, but not limited to, scanning the drivers' daily logs into the "J.J. Keller" system, following up on reports generated by the J.J. Keller system, preparing other reports and paperwork relating to

---

[6] Plaintiff admits the above fact, but then disputes whether all drivers complied with MBM's policies.  (R-DSMF ¶ 7.)  Because that response does not contravene the fact as proposed, and because this assertions is dealt with <u>infra</u>, the Court deems DSMF ¶ 7 admitted.

[7] Plaintiff admits the above fact, but then disputes whether MBM applied its policies in a non-discriminatory manner.  (R-DSMF ¶ 8.)  Because that response does not contravene the fact as proposed, and because the assertions made therein are dealt with <u>infra</u>, the Court deems DSMF ¶ 8 admitted.

[8] Plaintiff admits the above fact, but then asserts additional immaterial facts.  (<u>See</u> R-DSMF ¶ 9.)  The Court thus deems DSMF ¶ 9 admitted.

deliveries and pick-ups, entering payroll data, communicating with customers, and communicating with the Company's drivers regarding routes and trip-related paperwork, etc.   (DSMF ¶ 10.)[9]   Drivers employed at the Newnan facility regularly got annoyed with the transportation clerks and have accused them of favoritism or other unfair treatment relating to issues such as payroll, route scheduling and equipment assignments; complaints such as these were made every single day, regardless of the race of the drivers involved.  (Id. ¶ 11.)[10]

### D.    Plaintiff Reports Ms. Davis's Inappropriate Remark

During July 2014, plaintiff overheard Transportation Clerk Carla Davis tell someone to whom she was speaking by telephone, "The problem around here is they hired too many [n-----s]."  Plaintiff reported this comment to Transportation Supervisor Spradlin, who reported it to Transportation Manager Davies, who reported it to D.C. Manager Bayne.  (DSMF ¶ 12.)[11]  Plaintiff does not dispute

---

[9] Plaintiff admits the above fact, but then asserts additional immaterial facts. (See R-DSMF ¶ 10.)  The Court thus deems DSMF ¶ 10 admitted.

[10] Plaintiff does not admit or deny the above fact, but makes a number of additional factual assertions with no citation to the record.  (R-DSMF ¶ 11.)  The Court thus disregards these assertions and deems DSMF ¶ 11 admitted.

[11] The Court excludes DSMF ¶¶ 13-14 because any fact dispute over whether Mr. Bayne sought a written statement from plaintiff but he would not

the preceding proposed fact (see R-DSMF ¶ 12), but adds over one page of additional facts (supported by a string cite), all of which are either immaterial,[12] not supported by the record cited,[13] or not based on the deponent's personal knowledge.[14]  Thus, the Court deems DSMF ¶ 12 admitted.

Although Ms. Davis denied using a racial slur or making any kind of race-related statement when confronted, Mr. Bayne reviewed MBM's harassment and non-discrimination policies with her and informed her that violation of those

---

provide one, and over whether plaintiff told Mr. Bayne that he did not want to pursue the matter, is immaterial.

[12] For example, plaintiff's claim that Mr. Bayne told him that he was going to send out a memo about racist language in the workplace but never did is immaterial.

[13] Plaintiff claims that Ms. Davis was never disciplined.  However, the record shows that, despite Ms. Davis's denials that she had used the "n" word and that she had called a driver a "black SOB," Mr. Bayne nevertheless counseled Ms. Davis and warned her that violation of MBM's harassment and non-discrimination policies could lead to discipline and discharge.  (See Def.'s Resp. & Objs. ¶ 12.)

[14] Plaintiff cites Ms. Berry's testimony to support his claim that employees were in Mr. Bayne's office on a weekly basis complaining about Ms. Davis.  (R-DSMF ¶ 12, citing Berry Dep. [53-9] 24-25, 100.)  However, Ms. Berry conceded that she was not in any of those meetings, which occurred behind closed doors; therefore, she is not competent to testify regarding what anyone said to Mr. Bayne in those meetings.  (See Def.'s Resp. & Objs. ¶ 12.)

policies would lead to discipline or discharge.  (DSMF ¶ 15.)[15]  MBM provided sworn statements from two African-American employees at the Newnan D.C. who complained about Ms. Davis being harsh, rude, or condescending, but they made clear that she did not treat them differently because of their race; nevertheless, Ms. Davis was counseled about the way she interacted with drivers and other employees.  (Id. ¶ 17, as modified per record cited.)[16]  MBM takes complaints of alleged harassment very seriously, and in fact discharged a Caucasian warehouse employee in April 2014 for making a statement which included the "n" word to African-American employees.  (Id. ¶ 18.)[17]

---

[15] Plaintiff does not dispute the above fact, but then asserts additional immaterial facts about it.  (See R-DSMF ¶ 15.)  The Court addressed the additional facts proposed by plaintiff supra and does not address them again here, but deems DSMF ¶ 15 admitted.  Also, the Court excludes facts proposed about whether MBM knew that Ms. Davis had a Confederate flag in the garage of her home and whether she had shown pictures of it to her co-workers.  (Compare DSMF ¶ 16, with R-DSMF ¶ 16.)  Any dispute over this proposed fact is immaterial.

[16] Plaintiff's response does not contravene the above fact (see R-DSMF ¶ 17), and the immaterial additional facts plaintiff proposes have been addressed supra.  Thus, the Court deems DSMF ¶ 17 admitted.

[17] Plaintiff attempts to contravene the above fact, but his response is argumentative, and the record he cites fails to support his contentions.  (See R-DSMF ¶ 18.)  The Court thus deems DSMF ¶ 18 admitted.

### E.   Issues with Plaintiff's DOT Logs

Plaintiff was very familiar with the procedure for completing paper logs, and understood that drivers in his position who are subject to DOT regulations are required to be familiar with and to comply with them, to maintain accurate records, and to refuse to engage in activity that would cause them to be in violation of them.  (DSMF ¶ 19.)[18]

During September 2014, Mr. Bayne began investigating plaintiff's logs after he was asked about plaintiff's failure to log a short trip between one location where he dropped off a trailer and a second location where he picked up a trailer to haul back to the Newnan facility.  (DSMF ¶ 20.)  Plaintiff does not dispute the preceding fact, but adds that Mr. Bayne informed him that he (Bayne) would check and confirm what the logging procedure was for putting in a trip that was two miles from where plaintiff had stopped to where he made a pick up.  (R-

_____

[18] Plaintiff does not dispute the above fact, but then asserts additional immaterial and argumentative facts about it (see R-DSMF ¶ 19), most of which find no support in the record excerpts he cites.  (See Def.'s Resp. & Objs. ¶ 19.) Thus, the Court deems DSMF ¶ 19 admitted.

11

DSMF ¶ 20, sentence 1.)  He adds that the logs reflect fifteen-minute time slots. (<u>Id.</u>, sentence 2.)[19]

When Mr. Bayne reviewed plaintiff's logs, he saw that the short trip referenced above had been omitted, and he saw another discrepancy, which prompted him to review additional logs submitted by plaintiff for August 2014. (DSMF ¶ 21.)  Plaintiff does not dispute the preceding fact; thus, the Court deems it admitted.  However, plaintiff makes numerous additional factual assertions in R-DSMF ¶¶ 21(a) through 21(d), which the Court addresses below.

Most of the statements in R-DSMF ¶ 21(a) are argumentative and not in compliance with Local Rule 56.1 because they presume cause and effect without providing any evidentiary support.  For example, plaintiff claims that he was subjected to two drug tests during this time period, and implies that this was retaliatory because drug tests are "supposed to be random."  (<u>Id.</u>)  However, the inference plaintiff asks the Court to draw is in conflict with his deposition, wherein he testified that the drug tests could have been random.  (Kenner Dep.

_____

[19] Defendant admits the two above stated additional facts.  (<u>See</u> Def.'s Resp. & Objs. ¶ 20.)  Plaintiff's additional proposed fact—that he was unsure of how to log this time—is immaterial and not supported by the record cited.

[53-1], at 221.)  In other words, plaintiff has no evidence that his selection for a drug test had anything to do with his report that Ms. Davis had used a racial slur.

In R-DSMF ¶ 21(b), plaintiff makes reference to a "Violations Summary Report," which he claims shows critical DOT violations for Caucasian drivers Michael Freeman (three violations), Chris Eubanks (two violations), John Erickson (four violations), and Joseph Troutt (two violations) and for himself (two violations).  Because plaintiff lost his job, he apparently wants the Court to infer that this document reflects disparate discipline.  The evidentiary support for R-DSMF ¶ 21(b) is plaintiff's Exhibit 3 ([57-2], at 6-10).  However, plaintiff failed to authenticate Exhibit 3.  <u>See</u> Fed. R. Evid. 901.  "[I]n order for a *document* to be considered on a motion for summary judgment, it must be authenticated by an affidavit that meets the requirements of Rule 56(e) of the Federal Rules of Civil Procedure, or otherwise authenticated pursuant to the Federal Rules of Evidence."  <u>Roman v. Metro. Atlanta Rapid Transit Auth.</u>, No. 1:06-CV-1465-CCH, 2008 WL 11320187, at *2 (N.D. Ga. June 27, 2008); <u>see also</u> <u>Williams v. Eckerd Family Youth Alternative</u>, 908 F. Supp. 908, 911 (M.D. Fla. 1995) ("This Court recognizes that for a document to be considered in support of or in opposition to a motion for summary judgment, it must be authenticated by an affidavit that meets the requirements of the summary

13

judgment rule.").   Plaintiff has provided no such affidavit, and his counsel's explanation of the document supporting R-DSMF ¶ 21(b) is insufficient.[20]  Thus, the Court cannot consider plaintiff's Exhibit 3 and any arguments he makes based upon it.

In R-DSMF ¶ 21(c), plaintiff cites to his Exhibits 5 ([57-2], at 14) and 6 ([57-2], at 15-16), which reflect an employee coaching form and a second written warning, respectively, issued by MBM to John Erickson (Caucasian).  Plaintiff does not explain why he cites these documents, but presumably he believes they reflect disparate discipline.  However, these two documents suffer from the same defect as plaintiff's Exhibit 3 discussed <u>supra</u>—they have not been authenticated.  Thus, this Court cannot consider them.[21]

---

[20] Even if plaintiff had authenticated Exhibit 3, it does not show what he claims.  As pointed out by defendant, Exhibit 3 shows instead that plaintiff and other African-American drivers like Jonathan Cammom and Previs Sheldon had log violations for which they were not disciplined or discharged.  (Def.'s Resp. & Objs. ¶ 21(b).)   Moreover, Exhibit 3 refutes plaintiff's claim that he was not provided progressive discipline for log violations.  (<u>Id.</u>)

[21] Even if the Court could consider these two exhibits, they do not show that Mr. Erickson intentionally falsified his logs as defendant's management believed plaintiff had done.  Instead, they show that unintentional errors by drivers that violate policy or DOT regulations may result in discipline, but not necessarily discharge.  (<u>See</u> Def.'s Resp. & Objs. ¶ 21(c).)

Finally, in R-DSMF ¶ 21(d), plaintiff claims that Michael Freeman had numerous issues with his logs.  Again, however, plaintiff has no admissible evidence to support this claim because he did not authenticate Exhibits 7, 8, and 9, which he references in R-DSMF ¶ 21(d).  Therefore, the Court cannot consider this proposed additional fact or the documents that he claims support it.  (The Court addresses Mr. Freeman's situation, infra.)

Turning back to plaintiff's logs, the record shows that Mr. Bayne's investigation of plaintiff's August 2014 logs revealed multiple discrepancies, which were determined by management—including MBM's Director of Logistics Buck Abel, who was responsible for DOT compliance—to be gross, intentional falsifications of company records warranting termination of employment. (DSMF ¶ 22.)  Plaintiff disputes the above proposed fact, but he cites no record evidence in R-DSMF ¶ 22 to support his argumentative response.[22]  Therefore, the Court must deem DSMF ¶ 22 admitted.

_____

[22] The only record cite plaintiff provides is to Exhibit 4 ([57-2], at 11-13), which is a copy of what plaintiff calls "heavily redacted" emails between Mr. Bayne and Regional Human Resources Manager Jim Piner, which he claims is proof that they were still analyzing his logs in November 2014, which was after his termination.  (R-DSMF ¶ 22.)  However, nothing in those emails show, as Mr.

Plaintiff acknowledged that the documents in Exhibit 12 to his deposition are daily driver's logs that he prepared in the course of his duties as a driver for MBM, but he denied for the first time at his deposition that some of the handwriting on those logs is his.  (DSMF ¶ 23.)  Plaintiff does not dispute the preceding proposed fact.  (See R-DSMF ¶ 23.)  He adds that he noted some differences between Exhibit 12 and Exhibit 13, which were logs produced by the EEOC in response to a FOIA request.  Plaintiff further adds that he did not see his original logs until his deposition, and that he testified he did not recognize some handwriting on a few pages of Exhibit 12.  (R-DSMF ¶ 23.)  Defendant agrees that the Court can consider all of these additional facts (see Def.'s Resp. & Objs. ¶ 23), but asserts, and the Court agrees, that plaintiff's failure to examine his original logs until his deposition and his inability to recognize certain markings on a few pages of Exhibit 12 is not material.[23]

---

Kenner contends, that "there was no proper procedure in the handling of Plaintiff's termination."  (Id.)

[23] Plaintiff avers that it is "his belief" that Transportation Clerk Davis was either changing or would white out information on his logs. (Kenner Aff. [57-3], ¶ 9.)  The few examples to which he points are discussed in paragraphs 10-14 of his Affidavit.  Plaintiff submits no factual basis to support his subjective belief that Ms. Davis altered his logs.  This is a mere inadmissible opinion or an unfounded accusation.  Even if Ms. Davis were altering plaintiff's logs, there is

Mr. Bayne's investigation showed that plaintiff had on multiple occasions falsified his logs by showing that he had travelled more miles than would be possible given DOT and MBM drive-time restrictions and the top speed of MBM tractors (the engines of which were governed to prohibit travel over certain speeds), as well as by indicating that he had gone into the tractor's sleeper berth in one location and come out in another (thus not recording the time to travel between the two locations).   (DSMF ¶ 24.)   Plaintiff does not dispute the preceding proposed fact (see R-DSMF ¶ 24), but adds a paragraph of additional facts which are not supported by a record citation.[24]  Thus, the Court deems DSMF ¶ 24 admitted.

Buck Abel, then MBM's Director of Logistics, who also determined that plaintiff's logs had been falsified and that his gross violations of MBM policy and DOT regulations warranted discharge, was unaware at the time of plaintiff's race

_____

no evidence that the decision-makers knew that; instead, they were entitled to rely on what the logs showed, and plaintiff has not challenged their good-faith belief in the logs.   When confronted with the logs while still employed at MBM, plaintiff never claimed that any of the discrepancies management found were placed there by Ms. Davis.

[24] In the second paragraph of R-DSMF ¶ 24, Mr. Kenner cites to Exhibits 3, 6, 7, and 13.   However, as discussed supra, these exhibits have not been authenticated and are thus inadmissible.

or of any complaint that he had made relating to racial slurs or other perceived discrimination or retaliation. (DSMF ¶ 25.)   Plaintiff does not dispute the preceding fact, but makes numerous assertions which are immaterial, argumentative, not supported by the record cited, or supported by unauthenticated, inadmissible exhibits.  (See R-DSMF ¶ 25.)  Therefore, the Court deems DSMF ¶ 25 admitted.

**F.    Plaintiff's Accident**

During late-September 2014 (which was during the same time that MBD was investigating plaintiff's logs), Mr. Bayne and Director of Logistics Abel received notice that a Newnan driver had been involved in a hit-and-run accident in Missouri on August 4, 2014.  (DSMF ¶ 26.)[25]  It is undisputed that plaintiff was involved in a motor vehicle accident on August 4, 2014; that he did not report the accident; and that he denied being involved in an accident.  (Id. ¶ 27.) Mr. Kenner claims that he was unaware that an accident had occurred.  (R-DSMF

_____

[25] Plaintiff does not deny the above proposed fact, but calls it a "sideswipe" event.  (R-DSMF ¶ 26.)  Defendant admits that an accident report used that term. (See Def.'s Resp. & Objs. ¶ 26.)

¶ 27.)[26]  Only after he was shown a videotaped recording of the accident (taken from the vehicle he struck) that had been provided to the Company's claims department did plaintiff acknowledge that he had been involved in a motor vehicle accident on August 4, 2014, and only then did he submit a written statement regarding that accident.  (DSMF ¶ 28.)  Plaintiff claims that when he saw the videotape, he recognized his truck and saw the maneuvers he undertook, which refreshed his memory.  (R-DSMF ¶ 28.)[27]

Plaintiff denied that he was aware of the accident at the time, but admitted that he stopped moving into the left lane and moved back into the right lane because he was aware of the other vehicle in the left lane.  (DSMF ¶ 29.) Plaintiff admitted that he was driving in a construction zone; that he did not reduce his speed to allow another vehicle to merge from the right in front of him

---

[26] Plaintiff cites MBM's statement of position to the EEOC for the proposition that the company's Safety and Compliance Department reviewed a video of the accident, found that he was at fault, and since the accident appeared to be minor, recommended that he be placed on a "risk rating letter for improper lane change and causing an accident."  (Pl.'s Ex. 12 [57-2], at 36.)  However, there is no indication that the Safety and Compliance Department was making a judgment on plaintiff's failure to report the accident, which is a violation of policy and a terminable offense.

[27] Plaintiff adds a number of other additional facts in R-DSMF ¶ 28, most of which are immaterial or not supported by a record citation or by citation to an authenticated, admissible exhibit.  Thus, the Court does not consider them.

but instead engaged his turn signal and began to change lanes by crossing a solid white line requiring drivers to maintain their lanes; that he was not looking on the left side at the lane into which he was moving, but that "[o]nce realizing that a vehicle was in the left lane, [he] immediately stopped [his] egression into that lane," and moved back to the right lane; and that he would have continued into the left lane had he not seen the van.  (Id. ¶ 30.)[28]

Mr. Bayne discussed the videotaped recording of plaintiff's accident with MBM's Director of Logistics (Mr. Abel) and the Regional Human Resources Manager (Mr. Piner), and the Director of Logistics determined that plaintiff almost certainly had knowledge of the accident at the time, and that, even if he did not, under the circumstances he should have confirmed that he had not been involved in an accident.  (DSMF ¶ 31.)[29]  Given the videotaped evidence of the August 4 accident and plaintiff's failure to report it, Director of Logistics Abel—

─────────────────────

[28] Plaintiff does not dispute the above proposed fact, but asserts additional facts which are not supported by a record citation (see R-DSMF ¶ 30); thus, the Court disregards them.

[29] Plaintiff does not dispute the above proposed fact, but asserts additional argumentative facts which do not contravene it (see R-DSMF ¶ 31); thus, the Court disregards them and deems DSMF ¶ 31 admitted.  The Court has reviewed the videotaped recording of plaintiff's accident.  Mr. Abel's determination that plaintiff should have known he had been in an accident was reasonable.

who at the time did not know plaintiff's race or that he had complained about a racial slur—concluded that plaintiff should not be allowed to drive for MBM.  (<u>Id.</u> ¶ 32.)  Plaintiff does not respond to the above proposed fact; thus the Court deems DSMF ¶ 32 admitted.   Instead, he proposed R-DSMF ¶¶ 32(a) through 32(d), which the Court addresses below.

In R-DSMF ¶ 32(a), plaintiff claims that he was treated differently than Caucasian driver John Erickson, who was the subject of a "Motorist Observation Report" dated September 22, 2014.  The Court notes that an anonymous motorist reported that Mr. Erickson had made an improper lane change.  There was no accident and certainly no failure to report an accident.  Thus, even if Mr. Erickson was not disciplined, this Report is not comparable to plaintiff's situation.

In R-DSMF ¶ 32(b), plaintiff claims that Caucasian driver Michael Freeman was in an accident that he did not report.  The record plaintiff cites to support this claim is the King Declaration [51-8].  However, in paragraph 11 of that Declaration, Mr. King shows that he has no personal knowledge of any such non-reported accident (i.e., "I heard that Mike Freeman had an accident that he didn't report . . . I don't have first hand knowledge of any of that, however."). Therefore, the Court cannot consider this assertion by Mr. King.  <u>See</u> Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must

be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

In R-DSMF ¶ 32(c), plaintiff mentions again the Safety and Compliance Department's judgment that his accident on August 4, 2014, was minor and its recommendation that he should receive only a risk reduction letter. As discussed supra note 19, there is no indication that the Safety and Compliance Department was making a judgment on plaintiff's failure to report the accident, which is a violation of policy and a terminable offense. As defendant suggests, whatever the Department recommended did not take into account the fact that MBM's management believed that plaintiff almost certainly had knowledge of the accident at the time, and that, even if he did not, under the circumstances he should have confirmed that he had not been involved in an accident. (See Def.'s Resp. & Objs. ¶ 32(c); see also DSMF ¶ 31 (deemed admitted).)

Finally, in R-DSMF ¶ 32(d), plaintiff complains that MBM convened a safety meeting (which he asserts is a normal procedure) with regard to an accident involving Caucasian driver Patrick Mitchum, at which that driver was allowed to

speak.  (Id. citing Pl.'s Ex. 13 [57-2], at 38-40.)[30]  He also claims that the EEOC position statement (discussed supra note 19) shows that a committee met, its findings are not in his employment record, and that he was not permitted to speak to its members.  (Id., citing Kenner Aff. [57-3] ¶ 21.)  As defendant correctly points out, there is no record evidence supporting the claim that MBM normally convenes safety meetings.  (See Def.'s Resp. & Objs. ¶ 32(d).)[31]  Moreover, plaintiff's additional fact erroneously conflates a local safety meeting with a decision of MBM's Safety and Compliance Department.  (Id.)  There is no evidence that any employee has ever spoken before a Safety and Compliance Department meeting.  Finally, defendant adds that there was no need to convene a safety committee to decide whether plaintiff's accident was preventable—it clearly was.  (Id.)

Returning now to the chronology of events, plaintiff, as well as other drivers and transportation department employees employed by MBM, was well aware that:  (1) falsification of Company records was cause for termination of

---

[30] Exhibit 13 has not been authenticated and is thus not admissible.

[31] Defendant submits that local safety committees convene occasionally to determine whether an accident involving one of MBM's drivers was preventable. (Def.'s Resp. & Objs. ¶ 32(d).)

employment; (2) failure to comply with DOT regulations by not maintaining accurate drivers' logs was cause for termination; (3) exceeding the allowed number of consecutive hours' driving was cause for termination; and (4) failing to report a motor vehicle accident was cause for termination.  (DSMF ¶ 33.)[32] MBM terminated plaintiff's employment on October 7, 2014, for failing to report the August 4, 2014 accident and for multiple log falsifications during August 2014.  (Id. ¶ 34.)[33]

### G.    Michael Freeman's Resignation

Earlier in 2014, after management was notified of potential driver's daily logs violations by a Caucasian driver named Michael Freeman, management conducted an investigation and uncovered significant issues with his logs. (DSMF ¶ 35.)[34]  Mr. Freeman resigned after learning that his logs were being

---

[32] Plaintiff does not deny the above proposed fact, but asserts additional facts which are not supported by the record cited.  Two of the record cites are to his EEOC charge (Ex. 14 [53-3], at 19) and a letter from his lawyer to defendant (Ex. 17 [53-4], at 1-3).  His other record cites, see R-DSMF ¶¶ 31(a)-(d) and 32(d), either do not exist or are non-responsive.  Thus, the Court deems DSMF ¶ 33 admitted.

[33] Plaintiff seeks to contravene the above fact with argument but with no citation to the record.  (See R-DSMF ¶ 34.)  In any event, the Court addresses plaintiff's contention that the reasons articulated by defendant are pretextual, infra.

[34] Plaintiff does not dispute the above fact (R-DSMF ¶ 35), but makes an

investigated, and MBM contends that he would have been discharged had he not resigned.  (<u>Id.</u> ¶ 36.)[35]

## II.     <u>SUMMARY JUDGMENT STANDARD</u>

The "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact."  <u>Rice-Lamar v. City of Fort Lauderdale, Fla.</u>, 232 F.3d 836, 840 (11th Cir. 2000) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  Those materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made

---

argumentative response that cites only two exhibits (Pl.'s Exs. 7 & 9), neither of them have been authenticated and are thus inadmissible.  The Court thus deems DSMF ¶ 34 admitted.

[35] Plaintiff does not dispute the above fact, admits that Mr. Freeman resigned, but cites two unauthenticated documents (Pl.'s Exs. 7 & 9) to support his claim that MBM did not discharge Mr. Freeman.  (<u>See</u> R-DSMF ¶ 36.) Plaintiff also claims that MBM promised Mr. Freeman that he could come back to work in a few months.  (<u>Id.</u>, citing Kenner Aff. [57-3] ¶ 23 and King Decl. [57-6] ¶ 5.)  However, both assertions are based on hearsay evidence.  Moreover, both Mr. Kenner and Mr. King concede that Mr. Freeman has not returned to work at MBM.  (Kenner Aff. [57-2] ¶ 23; King Decl. [57-6] ¶ 5.)

for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quotation marks omitted). Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). If in response the non-moving party does not sufficiently support an essential element of her case as to which she bears the burden of proof, summary judgment is appropriate. Rice-Lamar, 232 F.3d at 840. "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." Id. (citing Anderson, 477 U.S. at 255).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact but rather to determine whether there are any such issues to be tried. Anderson, 477 U.S. at 249-50. The applicable substantive law

26

will identify those facts that are material.  Id. at 248.  Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment.  Id.  Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  For factual issues to be "genuine," they must have a "real basis in the record."  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quotation marks omitted).  When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.   DISCUSSION

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1).  Under that statute, the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against him.  Green v. Sch. Bd. of Hillsborough County, Fla., 25 F.3d 974, 978 (11th Cir. 1994).  Absent direct evidence of discrimination (of which there is none here), a plaintiff may prove his

27

case through circumstantial evidence, using the burden-shifting framework articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-4, 93 S. Ct. 1817, 1824-25 (1973).  See Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam).

Under this framework, the plaintiff must first establish a prima facie case of discrimination.  One method a plaintiff can use to establish a prima facie case is to show that he (1) was a member of a protected class; (2) was subjected to an adverse employment action; (3) was qualified to do the job; and (4) was replaced or otherwise lost a position to a person outside the protected class.  Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000).  Alternatively, the fourth element may be satisfied if a plaintiff shows that he was treated less favorably than similarly situated employees outside the protected class.  Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).

If the plaintiff establishes a prima face case, the burden then shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action.  Chapman, 229 F.3d at 1024.  If the defendant employer articulates one or more legitimate, nondiscriminatory reasons for the challenged employment action, the presumption of discrimination is eliminated. The plaintiff then has the opportunity to come forward with evidence, including

the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.  Id.

To show that the employer's reasons were pretextual, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).  "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reason is pretextual, the employer is entitled to summary judgment on the plaintiff's claim."  Chapman, 229 F.3d at 1024-25; see also Combs, 106 F.3d at 1529 (explaining that the plaintiff must present "sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action").

"The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance."  Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997).  Thus, where the employer produces evidence that demonstrates poor performance, an employee's assertions of his own good

29

performance are insufficient to defeat summary judgment, in the absence of other evidence.  Id.    Moreover, a plaintiff may not establish that his employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer.  Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001).  This is because "federal courts do not sit to second-guess the business judgment of employers."  Combs, 106 F.3d at 1543.  "The fairness of such a decision is not the relevant inquiry.  The 'sole concern is whether unlawful discriminatory animus motivate[d] a challenged employment decision.'"  Pate v. Chilton Cty. Bd. of Educ., 853 F. Supp. 2d 1117, 1132 (M.D. Ala. 2012) (quoting Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999)).

Plaintiff fails to establish a prima facie case under the McDonnell Douglas framework.  He has not shown that he was replaced by someone outside of his protected class or that he was treated less favorably than similarly-situated employees outside of his protected class.  Plaintiff has identified only one Caucasian driver who was guilty of one of the same offenses for which he was fired—falsifying DOT logs.  However, MBM allowed that driver, Mike Freeman,

to resign in lieu of termination.  In other words, both the Caucasian driver and African-American driver were treated the same.

Plaintiff also argues that he was treated less favorably than Caucasian drivers John Erickson, Chris Eubanks, and Arthur Ashe.  (See Pl.'s Mem. [57], at 6-10, 13, 16.)  The law is clear that a comparator's conduct should "be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  Maniccia, 171 F.3d at 1368; see also Holifield, 115 F.3d at 1562 ("To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects.").

Plaintiff has submitted no probative evidence showing that these three white men were comparable to him.  In other words, plaintiff has not shown that these drivers committed intentional falsification of their logs like MBM believed he had done.  Moreover, as already discussed supra note 20 and in the text preceding that note, the Violations Summary Report on which plaintiff relies to support his disparate discipline claim about these three drivers has not been authenticated and is not admissible, but even if it were admissible, it shows that both black and white drivers committed minor errors in their logs for which they were not discharged.  Plaintiff has submitted no proof showing that MBM's

31

management knew of someone who had intentionally falsified logs and took no action against them.  Finally, even if these Caucasian drivers were not discharged for errors in their logs, there is no evidence that any of them also failed to report an accident.

Plaintiff also complains that he was not given progressive discipline.  (Pl.'s Mem. 11.)[36]  However, given MBM's belief that he had falsified his logs and failed to report an accident, both of which were punishable by immediate termination, there was no requirement that plaintiff receive progressive discipline. Plaintiff has also failed to submit proof that any employee outside of his protected group committed both of these offenses he committed yet received progressive discipline.[37]

Plaintiff also claims that he was terminated despite the fact that the Safety and Compliance Department recommended that he receive only minor discipline. (Pl.'s Mem. 16-17.)   However, as already discussed supra, the Safety and

_____

[36] Plaintiff did receive progressive discipline for minor errors he made in his logs (see Kenner Aff. [57-3] ¶ 17) and a risk reduction letter for his driving record (Pl.'s Resp. [57], at 8-9).

[37] Plaintiff's claim that he was disparately treated when a Caucasian employee was allowed to speak to a safety meeting and he was not allowed to speak to the Safety and Compliance Department (Pl.'s Mem. 16) lacks merit and has been addressed supra note 30.

Compliance Department's recommendation failed to take into account plaintiff's failure to report the accident and his falsification of DOT logs.

In sum, plaintiff has failed to establish a prima facie case. Therefore, summary judgment should be entered for MBM on plaintiff's Title VII race discrimination claim. See Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1433 (11th Cir. 1998) ("summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a prima facie case").

For purposes of providing the District Court with a full Report, the undersigned continues the analysis and assumes that plaintiff established a prima facie case. The undersigned further finds that MBM has articulated legitimate, non-discriminatory reasons for its action—its belief that plaintiff falsified his DOT logs and failed to report an accident. It is therefore incumbent upon plaintiff to raise a triable issue over whether those reasons are false. He cannot do so. In fact, plaintiff admits that he made errors in his logs but claims that discipline less than termination should have been imposed. That is simply quarreling with the employer's decision. Although plaintiff asserts that he did not report the accident because he did not know that he had been in one, he again is simply quarreling with the reasons articulated by MBM, which fails to raise a triable issue on pretext. As long as the reasons articulated are ones that might

33

motivate a reasonable employer, see Pennington, 261 F.3d at 1267, and falsifying logs and failing to report an accident qualify, MBM acted within its rights in terminating plaintiff.  Given that plaintiff has failed to raise a triable issue over whether MBM's articulated reasons are pretext, summary judgment should be entered for defendant on plaintiff's Title VII race discrimination claim.

"The McDonnell Douglas framework is not, however, the only way to use circumstantial evidence to survive a motion for summary judgment."  Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1255 (11th Cir. 2012); see also Ramsey v. Bd. of Regents of Univ. Sys. of Ga., 543 F. App'x 966, 969 (11th Cir. 2013) ("If the plaintiff's claim fails under the McDonnell Douglas framework, he may still survive summary judgment if the record presents "'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'") (quoting Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011)).

Plaintiff has argued Smith's mosaic standard.   (Pl.'s Mem. 17-18.) However, plaintiff has no evidence that what he said about Ms. Davis led Mr. Bayne to examine his DOT logs.  Despite plaintiff's claim that he was summarily fired (id. at 1), Mr. Bayne discussed plaintiff's logs with him on several occasions and gave him a chance to explain the discrepancies.  Mr. Bayne also asked

34

plaintiff about the accident, but he denied it, and only after being shown the videotaped recording did he confess.  Plaintiff argues that MBM did not care about the racial slur he reported (see Pl.'s Mem. 1-2), but the undisputed fact is that MBM confronted Ms. Davis about what had been reported about her, and when she denied it, nevertheless counseled her that any recurrence would lead to discipline, up to and including termination.  When the evidence shows that the employer fired the black employee it believed falsified logs (Mr. Kenner), and would have terminated the white employee it believed falsified logs (Mr. Freeman) had he not resigned before that could occur, and fired the only employee it believed failed to report an accident (Mr. Kenner), there is no convincing mosaic of circumstantial evidence which would allow a jury to infer intentional discrimination.

## IV.   **CONCLUSION**

For the reasons stated above, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [51] be **GRANTED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

35

**SO RECOMMENDED**, this 1st day of February, 2018.


_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE